McCALEB, Justice.
 

 On June 9, 1949 the Collector of Revenue assessed Ben Beckham, Jr. for a deficiency in income taxes for the year 1945 amounting to $6,546.47, together with interest pursuant to the provisions of R.S. 47:1562 (Act 21 of 1934, Sec. 83(a), as amended). Beck-ham protested and appealed to the Board of Tax Appeals, State of Louisiana, requesting a redetermination of the deficiency set forth by the Collector. On February 14, 1950 the Board of Tax Appeals rendered its decision affirming the assessment and no appeal to the courts was thereafter taken by Beckham. The amount of taxes found due by the Board of Tax Appeals was $5,513.01 with interest thereon at the rate of 6% per annum from May 15, 1946 until paid.
 

 Thereafter the Collector sought to execute on the assessment
 
 [1]
 
 without success and finally, during 1965, it was ascertained that Beckham had funds on deposit with Pioneer Bank & Trust Company in the Parish of Caddo. On June 1, 1965, the Collector brought this summary proceeding, as provided by R.S. 47:1574, against Pioneer Bank & Trust Company to distrain the bank account of Beckham, conformably with R.S. 47:1569, 47:1S70 and 47:1571. It is alleged that the Collector, by final decision of the Board of Tax Appeals, has an exigible “judgment” against Beckham in the sum of $10,762.87 ($5,513.01 together with interest thereon amounting to $3,803.-98; collection and court costs of $300 and attorney’s fees of $1,145.88, provided by R.S. 47:1512) which is unpaid and that Beckham has on deposit with Pioneer Bank & Trust Company an amount in excess of this sum. The Pioneer Bank answered, disclaiming interest in the account, deposited the amount of the Collector’s claim into the Registry of the District Court, requested that Beckham be made a party to the proceedings and prayed that it be hence dismissed. Conformably with its plea the bank was dismissed. Beckham then appeared and filed an exception of prescription, a plea of unconstitutionality of R.S. 47:1401 et seq. and an answer resisting the rule of the Collector.
 

 In his plea of prescription Beckham contended that the levy and distraint, being based on a “decision” of the Board of Tax Appeals of the State during the year 1950, or more than fifteen years prior to the in
 
 *451
 
 stitution of the rule for the collection of income taxes, cannot be maintained because the taxes on which the assessment is predicated are prescribed by Article 19, Section 19 of the Constitution of 1921, as amended by Act 35 of 1938, adopted November 8, 1938. This amendment provides: “ * * * that all taxes and licenses, other than real property taxes, shall prescribe in three years from the 31st day of December in the year in which such taxes or licenses are due.”
 

 Following a trial on the rule nisi the exception of prescription was maintained, the proceeding dismissed and the Clerk of Court was ordered to pay Beckham the sum deposited in the Registry of the Court. The Collector then appealed here from the adverse decision and, finding that this Court was without jurisdiction, we ordered the case transferred to the Court of Appeal, Second Circuit. See 248 La. 571, 180 So. 2d 708. After a hearing, the Court of Appeal affirmed the district court’s judgment. See 186 So.2d 652. That court was of the opinion that, whereas the running of the three-year prescription provided for by Section 19 of Article 19 of the Constitution had been interrupted by the Collector’s action in assessing a deficiency in income taxes, as specified in R.S. 47:1580 (1) and also by the filing of pleadings with the Board of Tax Appeals, as provided in R.S. 47:1580(3), such prescription began to run anew at the time the interruption “ * * * is concluded * * * And it was resolved “Therefore, under the quoted portion of Louisiana Constitution Art. 19, Sec. 19, the tax prescribed in three years from the date of the decision of the Board of Tax Appeals in 1950”.
 

 The application of the Collector for certiorari was granted and the matter has been argued and submitted for our determination.
 

 The Court of Appeal was unquestionably correct in holding that the course of the three-year constitutional prescription had been interrupted in this case. R.S. 47:1580 provides that the prescription running against any state tax, license, excise, interest, penalty or other charge shall be interrupted by:
 

 “(1) The collector’s action in assessing any such amounts in the manner provided by law;
 

 “(2) The filing of a summary proceeding in court;
 

 “(3) The filing of any pleadings, either by the collector or by a taxpayer, with the board of tax appeals or any state or federal court; and
 

 “(4) The filing of a false or fraudulent return * * *
 

 Thus, the Collector’s action in assessing a deficiency in income taxes against Beckham for the year 1945 interrupted the
 
 *453
 
 running of the constitutional prescription as, admittedly, three years had not run at the time such assessment was made. Likewise, the prescription remained interrupted when Beckham appealed to the Board of Tax Appeals and it was still interrupted after the Board of Tax Appeals sustained the Collector’s assessment for a deficiency, albeit for a lesser amount of taxes than that assessed by the Collector.
 

 However, we entertain grave doubt as to the ultimate conclusion of the Court of Appeal that the constitutional prescription, once interrupted, began to run over again in 1950 from the date of the decision of the Board of Tax Appeals. We know of no law or jurisprudence warranting the deduction that, when the running of prescription is interrupted by the commencement of a suit or other proceeding in which a monetary claim is reduced to judgment or rendered subject to execution, the same prescription starts running anew as soon as the proceedings are concluded by the rendition of a judgment or a final assessment. On the contrary, Article 3518 and 3519 of the Civil Code, which treat of the legal interruption of prescription by suit, make it clear that, once prescription has been interrupted, it may never run again save and except in case the claimant has abandoned or discontinued his demand, in which event the interruption is considered as having never happened (see Article 3519 C.C.). Article 3519 does provide for another prescription, that of five 'yea'rs for lack of prosecution, which a’c’crues only in the event the claimant has allowed such time to elapse without having taken any steps in the prosecutibn of the claim — for, here again, he is considered as having abandoned it. There is, of course, another prescription applying to money judgments. These judgments prescribe in ten years under Article 3547 of the Civil Code unless revived before that time pursuant to the procedure set forth in the Article.
 

 R.S. 47:1581 declares:
 

 “Any tax, penalty, interest, or other charges duly assessed under this Subtitle, being the equivalent of a judgment, shall not be subject to the running of any prescription other than such prescription as would run against a judgment in favor of the State of Louisiana in accordance with the Constitution and laws of this state; and the recordation of such assessment shall have the same effect as the recordation of a judgment.”
 

 The Court of Appeal rightly recognized in its opinion that this statute equates an assessment by the Collector to a judgment. However, it is evident that the court declined to give effect to the legislative equation for it stated that, while the statute dignifies an “assessment” as the equivalent of a judgment, “ * * * nevertheless the assessment retains its identity as a tax claim”.
 

 
 *455
 
 By its failure to perceive that there is a factual and legal difference between a mere tax claim and a final assessment, we believe the Court of Appeal fell into error. A tax claim may be assimilated to other monied demands for purposes of this discussion, except that it is collectible by methods other than suit. Indeed, R.S. 47:1561 vests in the Collector three alternative remedies for the collection of taxes, i. e., assessment and distraint, summary court proceeding or ordinary suit (see Collector of Revenue v. Olvey, 238 La. 980, 117 So.2d 563 and Collector of Revenue v. Frost, 240 La. 1067, 127 So.2d 151), and, whenever one of these remedies is exerted to final conclusion and the tax asesssment or judgment, as the case may be, becomes executory by distraint or otherwise, the status of the tax claim is thus transformed into an assessment or a judgment enforceable by seizure, garnishment or distraint. It therefore necessarily follows that the constitutional prescription, applicable only to tax claims which have not been asserted during a three year period, can no longer be invoked, forasmuch as the running of that prescription has been forever tolled by the action of the Collector in having timely reduced the claim to final assessment or judgment.
 
 [2]
 

 The prescription provided for in Section 19 of Article 19 of the Constitution by the amendment adopted in 1938, was never designed as an interdiction to the collection of tax judgments or assessments timely obtained. The sole purpose of the amendment was to deter the practice of bringing suits on stale tax claims. State v. Alden Mills, 202 La. 416, 12 So.2d 204.
 
 [3]
 

 Once an assessment of taxes has been made and has become final, either by
 
 *457
 
 reason of the tax debtor’s failure to appeal to the Board of Tax Appeals and thereafter to the courts, or, as here, by his failure to appeal to the courts from an adverse decision of the Board of Tax Appeals, the “assessment” of the Collector or the “judgment” of the Board of Tax Appeals or the court, in the event of appeal, the tax assessed is no longer a claim but an established liability which may be collected either by distraint or through judicial process as provided by R.S. 47:1574. Being a final assessment or a judgment, as the case may be, the constitutional prescription provided in Section 19 of Article 19 is irrelevant and were any prescription at all applicable it would be the one which applies to judgments. But the prescription applicable to judgments or final assessments cannot be invoked against the State. For Section 16 of Article 19 of the Constitution declares: “Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law”. And R.S. 47 :- 1579 states “There shall be no prescription running against any state tax, license, excise, interest, penalty or other charges levied under this Sub-title, except that ordained in the Constitution of Louisiana.”
 

 Since the only prescription applicable to the collection of excise and license taxes provided for in the Constitution is the three-year prescription, which has been effectually interrupted in the case at bar, the plea of Beckham is not well founded and should have been overruled.
 

 For the reasons assigned, the judgments of the district court and the Court of Appeal are annulled and reversed; the exception of prescription is overruled and the case is remanded to the district court for further proceedings consistent with the views herein expressed.
 

 [1]
 

 . Being unable to find any assets belonging to Beckham in Louisiana, the Collector filed suit against him in the Circuit Court of Jefferson County, Alabama, Equity Division, to recover the amount of the assessment, interest and attorney’s fees. No judgment was secured in that jurisdiction.
 

 [2]
 

 . The opposite view harbored by the lower courts would unquestionably lead to unseemly consequences. For the holding that the constitutional prescription starts anew from the date of the final assessment, or the date of the Board of Tax Appeals decision or, in like manner, from the court judgment, might well subject the State to the loss of its revenue by prescription notwithstanding the diligence of its Collector in establishing the claims timely and pursuing them to finality. The ruling below, if allowed to stand, would thus enable the judgment proof tax debtor to be relieved of his debt within three years and perhaps tempt unscrupulous ones to hide their assets, move them out of the State and, after three years, bring them back free from the fixed tax liability.
 

 [3]
 

 . There,
 
 the
 
 court said “The cause which induced the Legislature to enact the joint resolution, Act 35 of 1938, proposing to amend the Constitution so as to put an end to the bringing of suits on stale claims for back taxes alleged to be more than three years past-due, was the disclosure in the case of State v. Standard Oil Co., 188 La. 978, loc. cit. 1034-1037, 178 So. 601, loc. cit. 619, 620, that * * * the prescription by which, under Act 148 of 1906, suits to collect delinquent license taxes were barred after the lapse of three years, * * * became inapplicable to the severance tax imposed upon natural resources under the authority of the Constitution of 1921”.